

FILED
SEP 21 2020
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARRON ROBERT DEERLEADER, | ) |
| Petitioner, | ) |
| v. | ) Case No. 20-CV-0172-JED-FHM |
| SCOTT CROW, Director ODOC | ) |
| Respondent. | ) |

### REPLY AND OBJECTION

Comes Now Petitioner, Farron R. Deerleader, pro se., with Reply and Objection to Respondent's 'Motion To Stay Proceedings For Petitioner To Re-exhaust His Murphy Claim...' [Document 11], and 'Brief In Support...' [Document 12], filed by the Respondent on 08/24/20.

The Respondent recognizes the fact that Petitioner did in fact raise the fact that he is Native American "Indian", and that the State of Oklahoma lacked jurisdiction to convict him, in his application for post conviction, and in his appeal to the Oklahoma Court of Criminal Appeals. Neither the Creek County district court, or the Oklahoma Court of Criminal Appeals (OCCA) bothering to recognize the claim, or fact that there was a case pending before the U.S. Supreme Court that was directly related to the matter that was put before them. Either court could have held Petitioner's case up pending outcome of the *McGirt* ruling had they elected to do so.

In fact, at the time of his filing the *Murphy v. Royal* decision had been made by the 10th Circuit. This is reflected in the 'State's Response To Defendant's Application For Post Conviction Relief,' at #4, filed in the district Court of Creek County on August 2, 2019 (copy attached). After this the district court decided that since the 10th Cir. decision in *Murphy* case was on stay pending a decision by the Supreme Court, Petitioner's contention was premature.

1

The district court decision was Affirmed by the OCCA March 17, 2020, PC-2020-2, *Deerleader v. State*. OCCA stating at pages 3-4;

> "Petitioner claims that Oklahoma lacked jurisdiction in this case because he is an Indian and his crimes occurred in Indian Country. Petitioner offers nothing more than his own assertions that his crimes were committed within an Indian reservation, a dependent Indian community, or an Indian allotment. He cites no controlling authority which establishes the District Court lacked jurisdiction in this case. *See* Okla. Const. Art. VII, § 7 (Oklahoma shall be divided into judicial districts and the District Court in each judicial district shall have unlimited original jurisdiction of all justiciable matters)."

Petitioner asks this Court to take Judicial Notice of the Oklahoma Court of Criminal Appeals website WWW.occa.state.ok.us, pursuant to 12 O.S. 2202, *Mathis v. State*, 1987 OK CR 41, ¶ 3, 734 P.2d 312, 313; *Cooper v. Bd. of Cnty. Comm'rs of Grady Cnty.*, 1996 OK CIV APP 85, ¶ 8, 921 P.2de 376, 378 (Oklahoma requires the Court to take judicial notice of adjudicative facts when requested by a party and supplied with necessary information. 12 O.S. 1991 § 2202(D)), confirming the factual information stated above in the *Deerleader v. State* order issued by the OCCA.

Petitioner contends that each of the State courts was aware that there were pending cases before the Supreme Court that could be directly linked to and effect the jurisdictional issue put before them. Yet, the courts denied his jurisdictional claim without contemplation of placing his case on hold pending outcome of the Supreme Court's determination. The State's Attorneys recognized that the issue put before the courts was jurisdictional, Indian crime on Indian land.

The fact of the matter is that the Supreme Court ruling in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) makes it very clear that the State of Oklahoma does not have jurisdiction to prosecute, convict, or imprison any American Indian who commits any crime on Tribal territory (reservation). In this particular case the OCCA had an opportunity to preserve a right to correct the jurisdictional question by placing the case on hold until such time as the Supreme Court

resolved the jurisdictional question set for hearing before it. As had been done in several other instances. Though it may have been in those instances that the litigants were not pro se. post conviction applicants, but litigants on direct appeal and represented by attorneys be they private of from the Oklahoma Indigent Defense System.

> See *Mc Girt* **Page 22**, (In conjunction with the MCA, §1151(a) not only sends to federal court certain major crimes committed by Indians on reservations. Two doors down, in §1151(c), the statute does the same for major crimes committed by Indians on "Indian allotments, the Indian titles of which have not been extinguished." Despite this direction, however, Oklahoma state courts erroneously entertained prosecutions for major crimes by Indians on Indian allotments for *decades*, until state courts finally disavowed the practice in1989. See *State v. Klindt*, 782 P. 2d 401, 404 (Okla. Crim. App. 1989) (overruling *Ex parte Nowabbi*, 60 Okla. Crim. III, 61 P. 2d 1139 (1936)); see also *United States v. Sands*, 968 F. 2d 1058, 1062–1063 (CA10 1992). And if the State's prosecution practices disregarded §1151(c) for so long, it's unclear why we should take those same practices as a reliable guide to the meaning and application of §1151(a)).
>
> **Page 28,** (A State exercises jurisdiction over Native Americans with such persistence that the practice seems normal. Indian landowners lose their titles by fraud or otherwise in sufficient volume that no one remembers whose land it once was. All this continues for long enough that a reservation that was once beyond doubt becomes questionable, and then even far fetched. Sprinkle in a few predictions here, some contestable commentary there, and the job is done, a reservation is disestablished. None of these moves would be permitted in any other area of statutory interpretation, and there is no reason why they should be permitted here. That would be the rule of the strong, not the rule of law);
>
> **Page 29,** (So Oklahoma lacks jurisdiction to prosecute Mr. McGirt whether the Creek lands happen to fall in one category or another);
>
> **Pages 33-34,** (When Oklahoma won statehood in 1907, the MCA applied immediately according to its plain terms. That statute, as phrased at the time, provided exclusive federal jurisdiction over qualifying crimes by Indians in "*any Indian reservation*" located within "the boundaries of *any State.*" Act of Mar. 3, 1885, ch. 341, §9, 23 Stat. 385 (emphasis added); see also 18 U. S. C. §1151 (defining "Indian country" even more broadly);
>
> **Pages 34-35,** (The Enabling Act not only sent all non federal cases pending in territorial courts to state court. It *also* transferred pending cases that arose "under the Constitution, laws, or treaties of the United States" to federal district courts. §16, 34 Stat. 277. Pending criminal cases were thus transferred to federal court if the prosecution would have belonged there had the Territory been a State at the time of the crime. §1, 34 Stat.1287 (amending the Enabling Act). Nor did the statute make any distinction between cases arising in the former eastern (Indian) and western (Oklahoma) territories. So, simply put, the Enabling Act sent state-law cases to state court and federal-law cases to federal court.

3

And serious crimes by Indians in Indian country were matters that arose under the federal MCA and thus properly belonged in federal court from day one, wherever they arose within the new State);

**Page 37,** (Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek. Of course, the Creek Reservation alone is hardly insignificant, taking in most of Tulsa and certain neighboring communities in Northeastern Oklahoma. But neither is it unheard of for significant non-Indian populations to live successfully in or near reservations today. See, *e.g.*, Brief for National Congress of American Indians Fund as *Amicus Curiae* 26–28 (describing success of Tacoma, Washington, and Mount Pleasant, Michigan); see also *Parker*, 577 U. S., at ___–___ (slip op., at 10–12) (holding Pender, Nebraska, to be within Indian country despite tribe's absence from the disputed territory for more than 120 years);

**Pages 37-38,** (But the MCA applies only to certain crimes committed in Indian country by Indian defendants. A neighboring statute provides that federal law applies to a broader range of crimes by or against Indians in Indian country. See 18 U. S. C. §1152. States are otherwise free to apply their criminal laws in cases of non-Indian victims and defendants, including within Indian country. See *McBratney*, 104 U. S., at 624.);

**Page 42,** (The federal government promised the Creek a reservation in perpetuity. Over time, Congress has diminished that reservation. It has sometimes restricted and other times expanded the Tribe's authority. But Congress has never withdrawn the promised reservation. As a result, many of the arguments before us today follow a sadly familiar pattern. Yes, promises were made, but the price of keeping them has become too great, so now we should just cast a blind eye. We reject that thinking. If Congress wishes to withdraw its promises, it must say so. Unlawful acts, performed long enough and with sufficient vigor, are never enough to amend the law. To hold otherwise would be to elevate the most brazen and longstanding injustices over the law, both rewarding wrong and failing those in the right. The judgment of the Court of Criminal Appeals of Oklahoma is *Reversed).*

The State of Oklahoma lacked jurisdiction over Petitioner's case at the time of his conviction, by fact that he is an enrolled member of the Muscogee (Creek) Nation and his crime was committed within "Indian Country" as shown to be within the inner boundaries of the Creek Nation Reservation. *McGirt*.

The State does not have jurisdiction to now correct a matter that was evidently recognized by the Respondent throughout the State court post conviction proceedings.

This is a matter only correctable by a Court of relevant jurisdiction, a Court that has not

passed over the recognized and obvious claim as in-material, irrelevant, or not properly submitted by a pro se litigant under the protection of *Haines v. Kerner.* 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) as the state courts of Oklahoma have done.

This Court is the only Court with lawful jurisdiction in this matter since it has been determined by the Supreme Court that Petitioner is within and under the provisions of Federal jurisdiction alone. Petitioner submits that it would be a waste of judicial resources and questionable due process for his case to be remanded back to a State court that has clearly failed, in every respect, to preserve the opportunity to correct the obvious constitutional violation of his rights that the Respondent now asks the court to delay justice rendered on, by the only Court of competent jurisdiction, by a remanding his case back to a court that lacks legal jurisdiction, and right, to determine that said court and the State of Oklahoma does not have jurisdiction to have convicted this Petitioner in the first place, and does not have the right to have him incarcerated by virtue of that conviction.

He would ask that this Court find that the State court does not have the right to claim provision of procedural rule that was apparently waived by the State's failure to act in the first instance. The state forfeited any right to assert an opportunity to correct an obvious error when such was initially passed over by that court.

The State courts lack jurisdiction over Petitioner and his case, *McGirt.*

Therefore, Petitioner Moves this Court dismiss Respondent's Motion To Stay, and as the only recognized Court of relevant, and legal jurisdiction, issue an Order directing the State of Oklahoma to release Petitioner immediately by fact the State of Oklahoma does not have the authority to have him in custody. 22 O.S. § 1083(c). At which time the Federal Government, or the Muskogee Tribal Court will make a decision regarding prosecution of Petitioner based on the

available evidence of a crime. Crimes committed by Indians on the Reservation fall under the exclusive provisions of the Major Crimes Act (MCA), **18 U.S.C. § 1153**, or the General Crimes Act (GCA), **18 U.S.C. § 1152**, of the Federal Government.

Respectfully Submitted,

Farron Robert Deerleader

### Certificate of Mailing and Service

I, Farron Robert Deerleader, hereby certify that I mailed a true and correct copy, first class postage prepaid, of the foregoing 'Reply And Objection' to The State's Respondent, at:

Caroline E.J. Hunt
Assistant Att. General
313 N.E. 21st Street
Oklahoma City, OK. 73105

By placing same in the Legal Mail service of the Davis Correctional Facility on the 18 day of September, 2020. Further "I State under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct. 12 O.S. § 426."

9-18-2020
Dated

Farron Robert Deerleader

FILED IN DISTRICT COURT
CREEK COUNTY SAPULPA OK
AUG 0 2 2019
TIME 3:25 pm
Amanda VanOrsdol, COURT CLERK

IN THE DISTRICT COURT IN AND FOR CREEK COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA, )
)
    Plaintiff, )
)
vs. ) Case No.: CF 2016-319
)
FARRON ROBERT DEERLEADER, )
)
    Defendant. )

## STATE'S REPONSE TO DEFENDANT'S APPLICATION
## FOR POST CONVICTION RELIEF

COMES NOW, the State of Oklahoma, by District Attorney Max Cook through Assistant District Attorney Wm. Bartley Logsdon, and for its Response to the Defendant's Application for Post Conviction Relief, submits the following:

1.     The Defendant, represented by an attorney, appeals his conviction to the Oklahoma Court of Criminal Appeals, *F 2017-563*, and the Defendant's convictions are affirmed. Now that the Defendant loses his appeal, he files, pro-se, an Application for Post Conviction Relief with this Court alleging three propositions of error: lack of jurisdiction; ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

2.     Initially, this court should deny the Defendant's Application for Post Conviction Relief as it does not establish, beyond the Defendant's naked, unsubstantiated and self-serving statements, that he is entitled to relief under the Post Conviction Act. Specifically, 22 O.S. § 1080 (1970) establishes the circumstances required to trigger the applicability and use of the Post Conviction

Act. Those specific circumstances are as follows:

    (a) that the conviction or the sentence was in violation of the Constitution or laws of this state;

    (b) that the court was without jurisdiction to impose sentence;

    (c) that the sentence exceeds the maximum authorized by law;

    (d) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

    (e) that his sentence has expired, his suspended sentence, probation, parole, or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or

    (f) that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy;

The State contends the Defendant does not meet any circumstance or criteria which is required for him to be eligible for relief under the Post Conviction Relief Act.

3.    The second reason this Court should deny Defendant's Application is that the Post Conviction Act is not intended to provide a second appeal. *See. Ritchie v. State, 1998 Ok Cr 26.* Specifically, matters which have or could have been raised on direct appeal, but are not, will not be considered in post conviction proceedings. *See. Nguyen v. State*, 1994 Ok Cr 48. Defendant's first two

propositions; lack of jurisdiction and ineffective assistance of trial counsel, could have been raised on direct appeal and are not, thus waiving and barring them from consideration under the Post Conviction Relief Act.

4. Additionally, specifically regarding Defendant's first proposition of lack of jurisdiction; the argument is, at best, premature. The *Murphy* case, which defendant is attempting to latch onto, is still pending a decision and thus premature for defendant to claim relief under that case. Furthermore, defendant does not establish and/or meet the requirements outlined and argued in the *Murphy* case other than the defendant's bald, unsubstantiated claims of what encompasses Indian land in Oklahoma. Simply claiming to be an Indian does not qualify the defendant for relief.

5. Specifically regarding the Defendant's second proposition of ineffective assistance of trial counsel, in addition to the arguments held in State's paragraphs two and three, the Defendant does not establish the substantive elements necessary for an ineffective assistance of counsel claim. Under the law of Oklahoma relating to ineffective assistance of counsel, as explained in *Martinez v. State*, 2016 Ok Cr 3, the Defendant must establish that the attorney's performance was deficient and that deficient performance deprived Defendant of a fair trial. Deficient performance is more than being merely wrong, it requires a "completely unreasonable" performance by the attorney. It also requires the Defendant to prove there is a reasonable probability that the trial outcome would be different but for the attorney's ineffective assistance/performance. When weighing the Defendant's assertions, the Court gives great deference to

Counsel's decisions and presumes a reasonable trial strategy was employed. *Id.* at ¶¶ 50 through 58. Defendant proves none of the substantive elements required for a prima facially valid ineffective assistance of counsel claim and the Defendant's second proposition should be denied.

6. The State contends the Defendant is being less than genuine when claiming the errors in Proposition one and two. The Defendant has multiple opportunities to address these issues with this Court. The Defendant knew the trial strategy, yet never complained to this Court regarding his attorney, his attorney's performance or the trial strategy. The Court has a conversation with the Defendant prior to the start of the trial regarding ranges of punishments, plea negotiations, possible plea agreements, etc., and makes sure the Defendant understands all his options and that he is choosing freely and voluntarily to go to trial. Prior to the Defendant exercising his right to not testify, this Court again discusses the options the Defendant has, makes sure he understands them and inquires if he has any questions. Lastly, at Sentencing, this Court again gives the Defendant the opportunity to put forth any statements, concerns or comments. The Defendant NEVER says anything, at any time, regarding any concerns or objections over the case or trial strategy or his attorney. The Defendant has no issue with the trial, counsel or strategy employed until after the jury convicts him.

7. Regarding Defendant's Proposition three, ineffective assistance of appellate counsel, the same law and analysis regarding ineffective assistance of trial counsel generally applies. For this Court to find ineffective assistance of appellate counsel, the Defendant must demonstrate, and this Court believe, that

had appellate counsel not been ineffective, the sentence would have been modified, remanded or reversed; with the presumption being a reasonable strategy was employed by the attorney with great deference given to counsel's decisions. Not only does the Defendant not meet this burden, but there is no reason to believe the sentence would be modified, remanded or reversed on appeal. Also, please keep in mind that the Defendant already had the appellate court review his case and it affirmed all rulings made by this trial court.

WHEREFORE, premises considered, the State prays this Court deny Defendant's Application for Post Conviction Relief.

RESPECTFULLY SUBMITTED,

_____
Wm. Bartley Logsdon, OBA #17089
Assistant District Attorney
222 E. Dewey, Suite 302
Sapulpa, Oklahoma 74066
(918) 224-3921
(918) 227-6346 fax

### Certificate of Mailing

I hereby certify that on the day of filing this Response, a true and correct copy is mailed, via the USPS, to Defendant: Farron Deerleader, 6888 East 133rd Road, Holdenville, OK 74848.

_____
Wm. Bartley Logsdon

Farrin Deerleader #207468
6888 E. 133RD Rd.
Holdenville, OK.
74848.

20-CV-172 JED-FHM

RECEIVED
SEP 21 2020
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

Postmarked 9/18/20-DG

Clerk, United States District Court
Northern District of Oklahoma
333 West Fourth Street, Room 411
Tulsa, Oklahoma.
74103-3819



"This correspondence is from an inmate under the custody of the Oklahoma Department of Corrections (ODOC). For specific information about the inmate such as offense, projected release date, photo, etc., visit our website at http://www.ok.gov/doc Click on the 'Inmates' link then the 'Inmate Lookup' link or contact Davis Correctional Facility 405-379-6400 Further, the facility is not responsible for the substance or content. Objectionable material may be returned to the facility head at Davis Correctional Facility."