IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FARRON ROBERT DEERLEADER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0172-JED-CDL |
| | ) | |
| SCOTT CROW, Director of the | ) | |
| Oklahoma Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Respondent's motion (Doc. 11) requesting a stay of this habeas proceeding. Respondent filed a brief (Doc. 12) in support of the motion, and Petitioner filed a response (Doc. 13) opposing the motion. For the following reasons, the Court denies Respondent's motion. No later than 21 days after the entry of this opinion and order, Respondent shall file a limited response demonstrating why this Court should not grant Petitioner's request for federal habeas relief on the basis of the jurisdictional claim asserted in claim four of the petition for writ of habeas corpus.

**I.**

Petitioner seeks federal habeas relief from the criminal judgment entered against him in the District Court of Creek County, Case No. CF-2016-319. Doc. 1, Pet., at 1. Following a trial, the jury in that case found Petitioner guilty of second-degree burglary and larceny of an automobile, both after former conviction of two or more felonies, and recommended a 45-year prison sentence for each conviction. Doc. 1, Pet., at 1; Doc. 12, Resp't's Br., at 2. The trial court sentenced petitioner accordingly and ordered the sentences to be served consecutively. Doc. 12, Resp't's Br., at 2. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals (OCCA)

affirmed his convictions and sentences on August 16, 2018.  Doc. 1, Pet., at 2; Doc. 12, Resp't's Br., at 2.  Petitioner filed an application for postconviction relief on July 2, 2019, the state district court denied the application on November 18, 2019, and the OCCA affirmed the order denying the application on March 17, 2020.  Doc. 1, Pet., at 3, 35-46; Doc. 12, Resp't's Br., at 3.

Petitioner filed the instant federal habeas petition in April 2020, raising six claims for relief. Doc. 1, Pet., at 1, 5-31.  As relevant to Respondent's request for a stay of this habeas action, Petitioner asserts in claim four that the State of Oklahoma lacked jurisdiction to prosecute him because he is a member and citizen of the Muscogee (Creek) Nation and he committed the offenses for which he was convicted within the boundaries of the Muscogee (Creek) Nation Reservation. Doc. 1, Pet., at 21-23.  To support this claim, Petitioner primarily cites *Murphy v. Royal*, 866 F.3d 1164 (10th Cir. 2017), and he submitted copies of documents showing that he has been an enrolled member of the Muscogee (Creek) Nation since 1990 and that he is certified as having a certain degree of "Indian blood."  Doc. 1, Pet., at 21-23.  The *Murphy* opinion Petitioner cites was issued in August 2017, and was amended and superseded in November 2017 by *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017) ("*Murphy I*").  In *Murphy I*, the Court of Appeals for the Tenth Circuit concluded that Congress has not disestablished the Muscogee (Creek) Nation Reservation and, as a result, the land within the boundaries of that reservation is "Indian country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153.  *Murphy I*, 875 F.3d at 966.  Under § 1153, only the federal government has jurisdiction to prosecute certain crimes committed by or against Native Americans within "Indian country."  28 U.S.C. § 1153(a).  The U.S. Supreme Court granted a petition for writ of certiorari to review the Tenth Circuit's conclusion in *Murphy I*.  *Sharp v. Murphy*, 138 S. Ct. 2026 (2018).

In July 2020, about three months after Petitioner commenced this habeas action, the

Supreme Court issued decisions in two cases relevant to Petitioner's claim four—*McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), and *Sharp v. Murphy*, 140 S. Ct. 2412 (2020) ("*Murphy II*"). *McGirt* reached the Supreme Court via a petition for writ of certiorari filed by a state prisoner who sought review of the OCCA's decision denying his application for postconviction relief. *See McGirt v. Oklahoma*, 140 S. Ct. 659 (Dec. 13, 2019) (granting petition for writ of certiorari). Like Petitioner and the habeas petitioner in *Murphy I*, the prisoner in *McGirt* claimed that because he was a Native American, the State lacked jurisdiction to prosecute him for serious offenses he committed within the boundaries of the Muscogee (Creek) Nation. *McGirt*, 140 S. Ct. at 2459. The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the historical boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction to prosecute certain crimes committed within those boundaries if those crimes are committed by or against Native Americans. *McGirt*, 140 S. Ct. at 2468, 2479-80. Relying on *McGirt*, the Supreme Court in *Murphy II* summarily affirmed the Tenth Circuit's 2017 decision that had reached the same conclusion. *Murphy II*, 140 S. Ct. at 2412.

On August 24, 2020, in response to Petitioner's request for habeas relief, Respondent filed a motion (Doc. 11) requesting a stay of this habeas action and an order directing Petitioner to return to state court to "re-exhaust" his claim that the State lacked jurisdiction over his criminal prosecution. Respondent argues that re-exhaustion is warranted to "due to the supervening change in federal law announced in *McGirt*." Doc. 12, Resp't's Br., at 6. Petitioner opposes Respondent's request for a stay and contends that he should not be required to re-exhaust his claim. Doc. 13, Pet'r's Resp., at 2-3.

3

## II.

Respondent's request for a stay is based on the exhaustion requirement codified in 28 U.S.C. § 2254(b).  Docs. 11, 12.  When a state prisoner, in custody under a criminal judgment issued by a state, requests federal habeas relief, a federal court may grant relief from that judgment if that prisoner shows that he or she "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  But, under the exhaustion doctrine, a federal court generally may not grant habeas relief from a state-court judgment unless the prisoner first shows that he "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also Ellis v. Raemisch*, 872 F.3d 1064, 1076 (10th Cir. 2017) (noting that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "prohibits federal courts from granting habeas relief to state prisoners who have not exhausted available state remedies").

The exhaustion requirement promotes comity between state and federal courts because "[s]tate courts, like federal courts, are obliged to enforce federal law."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  *See also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the exhaustion "requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982))).  "Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *Boerckel*, 526 U.S. at 844.  The *Boerckel* Court explained that the exhaustion requirement is satisfied when a state prisoner "invok[es] one complete round of the State's established appellate review process" and that the prisoner need only "give state courts a *fair* opportunity to act on [the prisoner's] claims."  526 U.S. at 844-45 (emphasis in original).  Further fleshing out this requirement, the Supreme Court has

4

explained that the prisoner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his [federal] claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Here, Respondent concedes, and the record supports, that Petitioner fairly presented, and therefore properly exhausted, claim four through state postconviction proceedings. Doc. 1, Pet., at 24, 38, 44-45;[1] Doc. 12, Resp't's Br., at 3; Doc. 13, Pet'r's Resp., at 1-3. In state district court, Petitioner asserted that he "is an American Indian member and citizen of the Muscogee (Creek) Nation" and he attached documents to support his assertion. *See* Appl. for Postconviction Relief (Doc. CC19070300000400), *State v. Deerleader*, No. CF-2016-319, oscn.net/dockets/GetCaseInformation.aspx?db-creek&number=CF-2016-319&cmid=14389, last visited Nov. 12, 2020. Petitioner further asserted that he was arrested in Kiefer, Oklahoma and held in the Creek County Jail on charges of burglarizing, and stealing a car from, a home in Mounds, Oklahoma which, he argued, "is located within the 1866 Territorial Boundaries of the Muscogee (Creek) Nation which is defined as Indian Country under Title 18 U.S.C. § 1151." *Id.* at 2. To support his claim that, under these facts, the State of Oklahoma lacked jurisdiction over his criminal prosecution, Petitioner cited *State v. Klindt*, 782 P.2d 401 (Okla. Crim. App. 1989), and *Indian Country, U.S.A., Inc. v. Oklahoma* ex rel. *Okla. Tax Comm'n*, 829 F.2d 967 (10th Cir. 1987). *Id.* at 3. After noting that it had reviewed the "[e]ntire court file," the state district court

---

[1] With his petition, Petitioner provided copies of postconviction rulings from the state district court and the OCCA. Respondent refers to these decisions and other exhibits in his brief but failed to attach any exhibits. Regardless, because both parties refer to documents from Petitioner's state postconviction proceedings, the Court finds it appropriate to take judicial notice of records from Petitioner's state postconviction proceedings as those records are available to the public through the Oklahoma State Courts Network, https:///www.oscn.net. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1079) (noting "that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

rejected Petitioner's claim, stating,

> Defendant/Petitioner first states the State has no jurisdiction because he is a citizen of the Muscogee (Creek) Nation. Additionally, he adds that the residence of the victim is within the territorial bounds of the Nation. While he does not cite the Murphy case, now pending before the U.S. Supreme Court, he is making similar allegations. Since there is a stay of the decision of the 10th Circuit, this contention is premature.

Doc. 1, Pet., at 37-38.

On postconviction appeal, the OCCA rejected Petitioner's claim for different reasons, stating,

> Finally, Petitioner claims that Oklahoma lacked jurisdiction in this case because he is an Indian and his crimes occurred in Indian Country. Petitioner offers nothing other than his own assertions that his crimes were committed within an Indian reservation, a dependent Indian community, or an Indian allotment. He cites no controlling authority which establishes the District Court lacked jurisdiction in this case. *See* Okla. Const. Art. VII, § 7 (Oklahoma shall be divided into judicial districts and the District Court in each judicial district shall have unlimited original jurisdiction of all justiciable matters). This Court finds no sufficient reason to allow Petitioner's ground for relief to be the basis of this application for post-conviction relief.

Doc. 1, Pet., at 44-45.

Respondent acknowledges that "the OCCA admittedly denied Petitioner's *Murphy* claim on its merits." Doc. 12, Resp't's Br., at 9.[2] But Respondent argues the OCCA did not have a "full and fair opportunity to address Petitioner's *Murphy* claim" because, at the time of its decision, the OCCA was bound by its "previous ruling in *Murphy v. State*, where the OCCA held that the Creek Nation had been disestablished." Doc. 12, Resp't's Br., at 9 (citing *Murphy v. State*, 124 P.3d 1198, 1207-08 (2005)). Respondent further argues "[n]ow that *McGirt* has been decided, and *Murphy v. State* has been expressly overruled," Petitioner should be required to "re-exhaust his *Murphy* claim before this Court entertain[s] a collateral attack" on that claim. Doc. 12, Resp't's

---

[2] For ease of discussion, the Court will also sometimes refer to Petitioner's claim four or the same claim raised by other habeas petitioners as a "*Murphy* claim."

Br., at 9-10.

Petitioner opposes a stay and contends that he should not be required to re-exhaust the *Murphy* claim he previously presented to state courts through state postconviction proceedings. Doc. 13, Pet'r's Resp., at 2-3. He acknowledges that *Murphy I* was pending review before the U.S. Supreme Court when the OCCA rejected his claim, but he argues that fact only strengthens his position because "the OCCA had an opportunity to preserve a right to correct the jurisdictional question by placing [his postconviction appeal] on hold until such time as the Supreme Court resolved the jurisdictional question set for hearing before it." Doc. 13, Pet'r's Resp., at 2-3. For two reasons, the Court finds Petitioner has the better argument.

**A.      Petitioner properly exhausted claim four.**

First, as previously discussed, Respondent concedes that Petitioner exhausted claim four by presenting the legal and factual bases of that claim to the state district court and the OCCA through postconviction proceedings before raising it in his federal habeas petition. For different reasons, each court rejected Petitioner's challenge to the trial court's jurisdiction. But both courts appeared to recognize the federal nature of Petitioner's *Murphy* claim and the facts he relied on to support his claim. Doc. 1, Pet., at 38, 44-45. Clearly, Petitioner did all that is required by the plain language of § 2254(b) and *Boerckel*, by giving the state courts a first and fair opportunity to review his *Murphy* claim and provide any necessary relief before he asserted that claim in his habeas petition. And, as Respondent acknowledges, the OCCA exercised its opportunity to review Petitioner's claim when it "admittedly denied Petitioner's *Murphy* claim on the merits." Doc. 12, Resp't's Br., at 9.

**B.      The circumstances of this case do not "require" re-exhaustion.**

Second, the cases Respondent cites to support his theory that the circumstances of this case

7

nevertheless "require" Petitioner to "re-exhaust" his *Murphy* claim do not persuade this Court that Petitioner must provide state courts a second opportunity to review that claim before this Court may consider it. Respondent primarily relies on two cases—*Drennon v. Hess*, 642 F.2d 1204 (10th Cir. 1981) (*per curiam*), and *Crisp v. Mayabb*, 668 F.2d 1127 (10th Cir. 1981)—to support his contention that Petitioner must re-exhaust claim four. Doc. 12, Resp't's Br., at 4-9. As Respondent contends, both cases support the general proposition that "intervening changes in law may necessitate re-exhaustion of a claim in state court before federal review of the claim." Doc. 12, Resp't's Br., at 4-5; *see Mayabb*, 668 F.2d at 1132; *Drennon*, 642 F.2d at 1204-05. But neither case supports Respondent's position that the circumstances of this case require re-exhaustion.

In *Drennon*, the Tenth Circuit determined that a state prisoner should re-exhaust a federal due-process claim before the federal district court reviewed that claim because the prisoner's claim arose from the State's alleged violation of a right created by state law. *Drennon*, 642 F.2d at 1204. The Tenth Circuit noted that the Supreme Court had recently issued two "supervening" cases relevant to the prisoner's claim—*Hicks v. Oklahoma*, 447 U.S. 343 (1980), and *Mabry v. Klimas*, 448 U.S. 444 (1980)—and found that "[r]emanding a case to the state court 'is particularly appropriate where, as here, the federal constitutional claim arises from the alleged deprivation by state courts of rights created under state law.'" *Drennon*, 642 F.2d at 1205 (quoting *Klimas*, 448 U.S. at 447).[3] The Tenth Circuit reasoned that, under the circumstances presented in *Drennon*, "the extent of [the petitioner's] constitutional right to be sentenced by a jury turns on the extent to which the Oklahoma state legislature has created such a right" and that "[t]he proper construction

---

[3] Notably, the *Klimas* Court made this statement after stating, "The claim that the [habeas petitioner] is entitled to be resentenced by reason of the amended recidivist statute apparently has not been presented to the state courts," and after noting an "absence of any reason to believe that state judicial remedies would now be unavailable." 448 U.S. at 447. Thus, it appears that *Klimas* addressed initial exhaustion, not re-exhaustion, of available state remedies.

of this statutory scheme in light of any applicable rules of construction suggested by *Hicks*, by other constitutional cases, or by state case authority is plainly a matter of state law in the first instance." *Drennon*, 642 F.2d at 1205. The Tenth Circuit further reasoned that "the federal courts do not have from the Oklahoma courts a sufficiently precise post-*Hicks* interpretation of the statutory scheme to enable them to decide an alleged due process violation arising from that scheme." *Drennon*, 642 F.2d at 1205.

Here, in contrast to the circumstances presented in *Drennon*, Petitioner asserts a federal due-process claim arising from the State's alleged violation of federal law, namely, the Major Crimes Act, and there are no underlying state-law issues or state statutory schemes that require further interpretation or clarification from Oklahoma courts before this Court can weigh in on that claim. To be fair, after discussing the need for further clarification from state courts on the intertwined state-law issues, the Tenth Circuit in *Drennon* used broad language suggesting re-exhaustion was also warranted in that case because (1) the petitioner might have "new state remedies which he may pursue" and (2) the supervening cases may have "create[d] theories not available at the time state remedies were initially exhausted." *Drennon*, 642 F.2d at 1205. But, as Respondent aptly notes, *McGirt* did not create "a new theory of relief" because "challenges to the State's jurisdiction under the Major Crimes Act and *Solem* [*v. Bartlett*, 465 U.S. 463 (1984)] have been available for decades." Doc. 12, Resp't's Br., at 6 n.3. And, while Respondent assures the Court that "the OCCA is giving *Murphy/McGirt* claims full consideration in light of *McGirt*," nothing in Respondent's brief suggests that state courts have created a new postconviction remedy for state prisoners seeking relief in light of *Murphy II* or *McGirt*. Doc. 12, Resp't's Br. at 9. Rather, it appears Respondent is requesting that Petitioner invoke, for a second time, one full round of Oklahoma's existing state postconviction procedures. Because the circumstances of this case

are significantly different than those in *Drennon*, the Court finds that *Drennon* does not support Respondent's request that Petitioner re-exhaust claim four.

Likewise, the Court finds that *Mayabb* does not support Respondent's request for re-exhaustion. In that case, the Tenth Circuit stated that re-exhaustion may be required when there has been "a supervening change in federal substantive law" or there have been "[c]hanges in state procedural law." *Mayabb*, 668 F.2d at 1132. But the Tenth Circuit further stated that "an intervening change in state substantive law" on a federal issue generally will not require a return to state court. *Id.* at 1133. It is not entirely clear which of these three principles Respondent intends to invoke. As just discussed, nothing in Respondent's brief suggests that *McGirt* led to any changes in state procedural laws or created new postconviction remedies. Further, by acknowledging that "*McGirt* did not establish a new rule or right," that "Indian Country claims were previously available," and that "*McGirt* did not change the law, [but] merely applied existing law to the Creek Reservation," Respondent appears to admit that *McGirt* also does not constitute an intervening change in federal substantive law. Doc. 12, Resp't's Br., at 6-7 nn. 2-3.

Thus, Respondent appears to contend that "re-exhaustion is required" because *McGirt* significantly impacted substantive state law on a federal issue. Specifically, Respondent asserts that "*McGirt* upset long-settled expectations within [Oklahoma]" and caused a "seismic shift in *everyone*'s understanding about the scope of the State's jurisdiction." Doc. 12, Resp't's Br., at 7 n.3. The Court does not necessarily disagree with Respondent's assessment of *McGirt*'s impact. But despite the breadth of its impact, the *McGirt* decision addressed a narrow issue: whether the land promised to the Muscogee (Creek) Nation through two treaties agreed to by that Nation and the U.S. government "remains an Indian reservation for purposes of federal criminal law." *McGirt*, 140 S. Ct. at 2459. And the *McGirt* Court addressed that issue by applying existing Supreme Court

10

precedent. *See id.* at 2469 ("[A]s we have said time and again, once a reservation is established, it retains that status 'until Congress explicitly states otherwise.'" (quoting *Solem*, 465 U.S. at 470)). The principles announced in *Mayabb* do not speak to the purported need to re-exhaust a federal due-process claim based on an intervening federal court decision that applies existing federal law in a way that significantly upsets one state's "settled beliefs and expectations" as to how federal law applies to a discrete set of facts. Doc. 12, Resp't's Br., at 7. Accordingly, the Court finds that *Mayabb* does not support Respondent's theory that Petitioner must return to state court to re-exhaust claim four.

Instead, the Court finds that *Mayabb* supports Petitioner's position because the Tenth Circuit ultimately determined, in that case, that re-exhaustion was not necessary. The court reasoned, in relevant part, that the petitioner in *Mayabb* previously presented his claim to the state courts, that "[t]he state procedure which petitioner invoked would have afforded an adequate forum for consideration of the legal and factual questions presented," and that "[p]robably because of the then controlling state substantive law, the petition was dismissed." *Mayabb*, 668 F.2d at 1133. The Tenth Circuit concluded it was not necessary for the petitioner to re-exhaust his claim because "the state courts had an opportunity to consider [the] petitioner's claim" and the intervening decision at issue in that case "made no change in the state postconviction remedy procedure" even though that decision "altered the substantive law of the state so as to recognize that persons such as petitioner may be entitled to a remedy in certain circumstances." *Id.*

Similarly, in this case, Petitioner presented his *Murphy* claim to the state courts through established state postconviction procedures initiated in July 2019, after the Tenth Circuit decided *Murphy I* but while that decision was pending before the Supreme Court. Doc. 1, Pet., at 38, 44-45. And, at least according to Respondent, the OCCA most likely rejected Petitioner's claim under

11

the binding precedent of its 2005 *Murphy* decision. Doc. 12, Resp't's Br., at 9. Even assuming the OCCA relied on its 2005 decision to reject Petitioner's claim, an assumption difficult to draw from the OCCA's opinion, and further assuming that *McGirt*'s ruling could be characterized as a change in substantive state law on the federal issue, *Mayabb* instructs that, in that situation, re-exhaustion generally is not warranted. *Mayabb*, 668 F.2d at 1133 (citing *Roberts v. LaVallee*, 389 U.S. 40 (1967), and *Galtieri v. Wainwright*, 582 F.2d 348, 355 (5th Cir. 1978)).

Moreover, even if *Mayabb* supports that re-exhaustion is sometimes warranted when an intervening federal court decision on a federal issue results in a change in substantive state law, the Court would decline to apply such a rule here. As Respondent candidly admits, the OCCA did not "directly cite[]" its 2005 *Murphy* decision when it rejected Petitioner's claim. Doc. 12, Resp't's Br., at 9. Further, the OCCA, in its March 2020 decision, also did not indirectly cite its prior decision or even hint that the Supreme Court's then-pending decisions in *Murphy II* and *McGirt* might impact Petitioner's claim. Instead, the OCCA suggested the authority most relevant to Petitioner's claim was the Oklahoma Constitution and appeared to suggest that Petitioner's claim was wholly without merit. Doc. 1, Pet., at 44-45. Under these circumstances, the Court finds no good reason to stay this case and require Petitioner to provide state courts with a second opportunity to consider the *Murphy* claim he squarely presented to them before the Supreme Court issued its decisions in *McGirt* and *Murphy II*. As Petitioner argues, the OCCA could have reserved its chance to be the first to determine whether Petitioner is entitled to relief for the alleged violation of federal law by staying his postconviction appeal pending the Supreme Court's rulings. Doc. 13, Pet'r's Resp., at 2-3.

For the reasons just discussed, Respondent has not cited any persuasive authority to convince this Court that, now that the federal issue has been decided and has, in Respondent's

12

words, "expressly overruled" the OCCA's contrary decision on that issue, Doc. 12, Resp't's Br. at 9, this Court must stay this habeas action and require Petitioner to return to state court to re-exhaust the federal due-process claim he asserts in claim four.[4]

### III.

Based on the foregoing analysis, the Court denies Respondent's motion to stay this habeas action. No later than 21 days after the entry of this opinion and order, Respondent shall file a limited response demonstrating why this Court should not grant Petitioner's request for federal habeas relief on the basis of the jurisdictional claim asserted in claim four of the petition for writ of habeas corpus.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Respondent's motion to stay (Doc. 11) is **denied**.

2. No later than 21 days after the entry of this opinion and order, Respondent shall file a limited response demonstrating why this Court should not grant Petitioner's request for federal habeas relief on the basis of the jurisdictional claim asserted in claim four of the petition for writ of habeas corpus.

3. No later than 14 days after the limited response is filed, Petitioner may, but is not required to, file a reply brief.

---

[4] Respondent also notes that this Court recently granted a state prisoner's request to stay a habeas action so the prisoner could exhaust a *Murphy* claim in state court. Dkt. 12, Resp't's Br., at 8. But, as Respondent recognizes, the prisoner in that case requested the stay and had recently filed an application for postconviction relief to exhaust that claim. *Id.*; *see Bethel v. Crow*, No. 17-CV-0367-GKF-FHM (N.D. Okla. Aug. 4, 2020) (unpublished) (concluding that a stay and administrative closure was appropriate to permit petitioner to exhaust *McGirt* claim in state court when the petitioner had not yet sought to amend habeas petition to add that claim, the claim was potentially untimely, and the action had been pending in federal court for three years). Here, it is Respondent that requests the stay and demands that Petitioner re-exhaust his timely and exhausted claim, and Petitioner opposes a stay. Because this case presents markedly different circumstances, it also warrants a different outcome.

ORDERED this 14th day of December, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14